UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


DARNELL RANDLE                                              CIVIL ACTION

VERSUS                                                          No. 15-395

MIKE TREGRE, ET AL.                                         SECTION I


<u>**ORDER AND REASONS**</u>

Before the Court is defendants' opposed motion *in limine*[1] to exclude testimony, evidence, and argument regarding the St. John the Baptist Parish Sheriff's office internal affairs division complaint and report ("internal affairs report" or "report") and defendants' opposed motion for partial summary judgment.[2]  In their motion *in limine*, defendants argue that the report should be excluded as hearsay.  All defendants except Travis Thomas and Hardy Schexnayder move for summary judgment on plaintiff's individual capacity claims pursuant to the doctrine of qualified immunity and, with respect to plaintiff's state law claims, La. R.S. 2798.1.  All defendants except Mike Tregre move for summary judgment on plaintiff's official capacity claims arguing that plaintiff has offered insufficient evidence to support those claims.

For the reasons set forth below, the Court concludes that defendants' motion for partial summary judgment is granted and that defendants' motion *in limine* is granted in part.

---

[1] R. Doc. No. 30.
[2] R. Doc. No. 31.

**BACKGROUND**

This lawsuit arises out of an incident that occurred on or about February 7, 2014 between plaintiff, Darnell Randle, and detectives of the St. John the Baptist Parish Sheriff's office ("Sheriff's Office").  Acting on an anonymous tip regarding the possession of illegal weapons at an apartment located in Edgard, Louisiana, the Sheriff's Office directed non-party Deputy Darlinta Cook—the Sheriff's housing liaison—and defendant, Narcotics Commander Major Walter Chappel ("Chappel"), to obtain the consent of the apartment owner, Curtis Randle,[3] to search the apartment.  Pursuant to the owner's consent,[4] defendants Travis Thomas ("Thomas"), Hardy Schexnayder ("Schexnayder"), Justin Bordelon ("Bordelon"), and Jonathan Rivet ("Rivet") entered the apartment to search for weapons.

Plaintiff was in the apartment when the detectives commenced the search.  There is a fact dispute regarding what next occurred.  According to the version of events plaintiff initially offered in his deposition, plaintiff was getting "high" on cocaine when the officers approached the apartment whereupon plaintiff moved into a bedroom in order to snort more cocaine before they entered.[5]  Schexnayder and Thomas entered the bedroom and told plaintiff "to get down," which plaintiff responded to by lying face down on the bed and placing his hands behind his back.[6]  Plaintiff next avers that Schexnayder "took [plaintiff] off the bed and slammed [him] on the floor.

---

[3] According to plaintiff, the lessors of the apartment were Curtis Randle, Clarence Randle, and Christopher Dennis.  R. Doc. No. 31-5, at 4:15-16.  These men are plaintiff's uncles.  R. Doc. No. 31-5, at 4:16.

[4] R. Doc. No. 31-3.

[5] R. Doc. No. 31-5, at 14:54.  Later in his deposition, plaintiff claimed that he was unable to recall whether he ingested cocaine in the bedroom.  R. Doc. No. 31-5, at 21–22:84-86.

[6] R. Doc. No. 31-5, at 14–15:54-57.

Then [plaintiff's] face like bounced on the floor like boom, you know."[7]  In order to preserve the remainder of his drugs, plaintiff "put the little bit [he] had left in [his] mouth."[8]

At some point, Schexnayder asked plaintiff his name, to which plaintiff gave an inaudible response as a result of the drugs in his mouth.[9]  Suspecting why plaintiff was unable to speak, Schexnayder then said—according to plaintiff—"Pick him up.  He got something in his mouth."[10] It is at that point that plaintiff contends that Schexnayder "kneed [plaintiff] in the chest" and then Schexnayder and Thomas started beating him, causing plaintiff to bleed and move in and out of consciousness.[11]  During this period, plaintiff claims that the detectives made no attempt to remove the drugs from his mouth, but only that they repeatedly punched him in the face.[12]  At some point during this alleged abuse, plaintiff was handcuffed and Schexnayder directed that he be taken to the front yard.[13]  While plaintiff's deposition testimony is unclear, he appears to assert that four other officers carried him to the front yard.[14]  Plaintiff believes that the entire exchange at this point may have lasted between ten to fifteen minutes.[15]

Plaintiff contends that once in the front yard, Schexnayder and Thomas continued to beat and kick him.[16]  At some point, another officer who plaintiff could not identify by name during his deposition approached and told the detectives to "[h]old up" and to "stop," stating "I got him

---

[7] R. Doc. No. 31-5, at 15:58.
[8] R. Doc. No. 31-5, at 14:54.
[9] R. Doc. No. 31-5, at 15:58.
[10] R. Doc. No. 31-5, at 15:58.
[11] R. Doc. No. 31-5, at 14:58-59.
[12] R. Doc. No. 31-5, at 15:58.
[13] R. Doc. No. 31-5, at 14:55.
[14] R. Doc. No. 31-5, at 25:97-99.
[15] R. Doc. No. 31-5, at 14:55.
[16] R. Doc. No. 31-5, at 16:62.

[meaning plaintiff]."[17]  This officer, who plaintiff later identified by photograph as Bordelon, placed plaintiff in a "sleeper-hold" and then used a flashlight to attempt to pry the drugs out of plaintiff's mouth.[18]  Plaintiff was clear, however, that Bordelon never struck plaintiff with the flashlight and never beat him.[19]  Ultimately, Bordelon was successful and plaintiff spit out the drugs.[20]

What is set forth above appears to be the extent of the physical abuse alleged by plaintiff. However, plaintiff did state during his deposition that it was possible that he was struck by officers other than Schexnayder and Thomas, but that he simply could not remember because he repeatedly lost consciousness.[21]

Defendants offer a different version of events.  While they admit that, after plaintiff was removed from the apartment, Bordelon used a sleeper hold and flashlight in order to extract the drugs from his mouth, they claim the force used to do so was reasonable given the exigent circumstances.[22]  In their memorandum in support of the motion for partial summary judgment, defendants deny that plaintiff was beaten, kicked, or punched at any point.[23]

It is uncontested that plaintiff was unarmed when discovered by the detectives, but that weapons were later discovered in the bedroom in which he was hiding when Schexnayder and Thomas found him.  Plaintiff was later charged with possession of a controlled substance,

---

[17] R. Doc. No. 31-5, at 16:62.
[18] R. Doc. No. 31-5, at 16–17:63-65, 26:103.
[19] R. Doc. No. 31-5, at 30:119-120.
[20] R. Doc. No. 31-5, at 16:63-64.
[21] R. Doc. No. 31-5, at 34–35:136-37.
[22] R. Doc. No. 31-7, at 3.
[23] R. Doc. No. 31-7.

obstruction of justice, possession of a stolen firearm, and possession of a weapon by a convicted felon.[24]  Defendants represent that the charges are currently pending.[25]

Subsequent to the incident at issue, "Sheriff Mike Tregre ["Sheriff Tregre"] opened an internal investigation into how the consent search was executed."[26]  Non-party Captain C.J. Destor, the investigator, interviewed witnesses and prepared a report.  The report contains, among other things, signed transcripts of interviews of members of the Sheriff's Office regarding the events that unfolded during the apartment search.  The majority of these statements were made by individuals who have been named as defendants in this case.

Several of the statements indicate that Bordelon punched plaintiff outside of the apartment and that Bordelon struck plaintiff several times in the face with a flashlight while plaintiff was in the bedroom, although these statements are inconsistent with one another as to precisely what abuse, if any, Bordelon inflicted on plaintiff.  Bordelon, himself, provided a statement in which he indicated that he never struck plaintiff, that there was already blood on the floor of the bedroom, and that plaintiff's mouth was already bleeding when Bordelon first arrived.[27]  Plaintiff also provided a statement as part of the investigation, although the report does not include a transcript of that interview.  Based on the investigator's summary of plaintiff's statement, however, it appears that the version of events plaintiff offered at that time coincides with the version of events he presented in his deposition.[28]

---

[24] R. Doc. No. 31-7, at 4.
[25] R. Doc. No. 31-1, at 4.
[26] R. Doc. No. 31-7, at 4.
[27] R. Doc. No. 30-3, at 16.
[28] R. Doc. No. 30-2, at 6; R. Doc. No. 30-3, at 23–24.

As part of the investigation, polygraph tests were also administered to Schexnayder, Bordelon, and Thomas.  According to notes made by the investigator, Schexnayder failed the test, Bordelon passed the test, and Thomas' results were inconclusive.[29]  The investigator's final impression was that Schexnayder and Thomas were lying about Bordelon's actions, possibly as the result of "jealousy and a joint conspiracy to have [d]etective [Bordelon] charged with brutality [and terminated]."[30]  The investigator's final recommendation was that Bordelon be exonerated and that Schexnayder and Thomas be terminated.[31]  The report did not reach a conclusion regarding whether excessive force was used on plaintiff.

## LAW AND ANALYSIS

**I.   Defendants' motion for partial summary judgment**

### A.  Standard of Law

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, the court determines there is no genuine issue of material fact.  *See* Fed. R. Civ. P. 56.  "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the

---

[29] R. Doc. No. 30-3, at 24.
[30] R. Doc. No. 30-2, at 9.
[31] R. Doc. No. 30-2, at 9.

absence of evidence supporting the other party's case.  *Id.*; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56, the nonmoving party must come forward with specific facts showing that there is a genuine issue of material fact for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted).  Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986).  The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue.  *Id.*  The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor."  *Id.* at 255; *see also Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

## B.  Analysis

There are nine defendants in this case—Mike Tregre, Sidney Triche, Walter R. Chappel, Travis Thomas, Hardy Schexnayder, Jonathan E. Rivet, Justin W. Bordelon, Anthony J. Goudia, and Heather A. Cruse.  All of the defendants are employees of the Sheriff's Office.  Each defendant has been sued both in his or her individual capacity and in his or her official capacity.  Plaintiff advances many theories of recovery against defendants under both Louisiana state law—Louisiana Civil Code Article 2315—and federal law—42 U.S.C. §§ 1983, 1985, and the U.S. Constitution.

Pursuant to this Court's previous order,[32] however, the excessive force claims against defendants, Sidney Triche, Walter R. Chappel, Jonathan E. Rivet, Anthony J. Goudia, and Heather A. Cruse, have been dismissed with prejudice.

The affirmative defense of qualified immunity, asserted by all of the defendants, if established, precludes liability for damages on all of plaintiff's federal law claims against defendants in their individual capacities. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (qualified immunity applies to § 1983 claims); *Kinney v. Weaver*, 367 F.3d 337, 351–55 (5th Cir. 2004) (en banc) (addressing qualified immunity with respect to a § 1985 claim). "Of course, an official sued in his official capacity may not take advantage of a qualified immunity defense." *Mitchell v. Forsyth*, 472 U.S. 511, 556, n.10 (1985). Accordingly, even if all of the defendants[33] were able to establish their entitlement to qualified immunity, this Court must still determine whether plaintiff's federal law claims against defendants in their official capacities should proceed. Defendants argue that, except with respect to the claims against Sheriff Tregre, the official capacity claims should not go forward because plaintiff cannot meet his evidentiary burden with respect to those claims.

As for plaintiff's state law claims, defendants argue that they are entitled to discretionary immunity pursuant to Louisiana Revised Statutes section 9:2798.1. That statute, which provides that public entities or their officers or employees are immune from suit for discretionary acts performed within the course and scope of employment, will preclude liability on all of plaintiff's

---

[32] R. Doc. No. 33.

[33] The Court notes that Schexnayder and Thomas do not seek summary judgment based on their qualified immunity defenses.

state law claims if its applicability is established by defendants. *See Turner v. Houma Mun. Fire*, No. 99-152, 2002 WL 1467876, at *6 (E.D. La. July 8, 2002) (Zainey, J.).

The Court will address (1) the applicability of the affirmative defense of qualified immunity; (2) plaintiff's federal claims against defendants in their official capacities, and (3) plaintiff's state law claims.

### 1)       Qualified Immunity Claims

All of the defendants except Schexnayder and Thomas seek summary judgment based on their qualified immunity defenses with respect to plaintiff's federal law claims.  In *Harlow v. Fitzgerald*, the U.S. Supreme Court established the principle that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  457 U.S. 800, 818 (1982).  "When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense."  *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009).  To discharge this burden, the plaintiff must satisfy the well-established two-prong test developed by the Supreme Court in *Saucier v. Katz*, 533 U.S. 194 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009).  *See Lytle v. Bexar County, Tex.*, 560 F.3d 404, 409 (5th Cir. 2009).

"First, he must claim that the defendants committed a constitutional violation under current law."[34]  *Club Retro, L.L.C.*, 568 F.3d at 194 (internal quotation marks omitted).  "Second, he must

---

[34] Contrary to plaintiff's assertion in his brief, R. Doc. No. 47, at 6, he cannot overcome the first prong of the *Saucier* inquiry simply by alleging that the defendants engaged in some conduct and then labeling that conduct a constitutional violation.  Rather, as the Supreme Court has made clear, to satisfy the first prong a plaintiff must convince the Court that "the facts that [the] plaintiff has

claim that the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." *Id.* (internal quotation marks omitted). "The second prong of the analysis is better understood as two separate inquiries: whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in light of clearly established law." *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005) (internal quotation marks and citations omitted). The Court can consider either prong first. *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013). "Whether an official's conduct was objectively reasonable is a question of law for the court, not a matter of fact for the jury." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

"Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law, and courts will not deny immunity unless existing precedent placed the statutory or constitutional question beyond debate." *Whitley*, 726 F.3d at 638 (internal quotation marks and citations omitted). "Unless all reasonable officers in the defendants' circumstance would have known that the conduct in question violated the constitution, the defendant is entitled to qualified immunity." *Batiste v. Theriot*, 458 F. App'x 351, 354 (5th Cir. 2012).

Because defendants' motion does not assert the defense of qualified immunity with respect to Schexnayder and Thomas, the Court considers the applicability of the defense only with respect to the remaining seven defendants in this case: Triche, Chappel, Rivet, Bordelon, Goudia, Cruse, and Sheriff Tregre.

---

alleged . . . or shown . . . make out a violation of a constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). In other words, plaintiff must show facts that, if true, would constitute a constitutional violation.

### a. Excessive force claims against Bordelon and Sheriff Tregre

The only defendants against whom plaintiff still alleges an excessive force claim, other than Schexnayder and Thomas, are Bordelon and Sheriff Tregre.  The Court must "'make two overlapping objective reasonableness inquiries'" when conducting the qualified immunity analysis in excessive force cases.  *Sanchez v. Fraley*, 376 F. App'x 449, 451 (5th Cir. 2010) (quoting *Lytle v. Bexar County*, 560 F.3d 404, 410 (5th Cir. 2009)) (internal quotation marks omitted).  As stated by the Fifth Circuit,

> Allegations that an officer used excessive force in conducting a seizure complicates the *Saucier* inquiry.  This complexity stems from having to make two "overlapping objective reasonableness inquir[ies]." [*Saucier v. Katz*, 533 U.S. 194, 210 (2001)] (Ginsburg, J., concurring in the judgment).  We must first answer the constitutional violation question by determining whether the officer's conduct met the Fourth Amendment's reasonableness requirement, as discussed below.  If we find that the officer's conduct was not reasonable under the Fourth Amendment, we must then answer the qualified immunity question by determining whether the law was sufficiently clear that a reasonable officer would have known that his conduct violated the constitution.  In other words, at this second step, we must ask the somewhat convoluted question of whether the law lacked such clarity that it would be reasonable for an officer to erroneously believe that his conduct was reasonable.

*Lytle*, 560 F.3d at 410.

The excessive force analysis is simplified when the plaintiff does not demonstrate that a particular defendant used *any* force against him.[35]  As defendants point out in their brief, plaintiff stated in his deposition that he did not know whether Sheriff Tregre was present during the consent search on December 7, 2014.[36]  Plaintiff has offered no evidence to contradict defendants' claim

---

[35] While courts have recognized excessive force claims where the force is by means other than physical contact—such as by threat or displaying a firearm—those circumstances are not implicated by the facts of this case.  *See, e.g., Martin v. Bd. of Cty. Comm'rs of Cty. of Pueblo*, 909 F.2d 402, 406 (10th Cir. 1990).

[36] R. Doc. No. 31-5, at 26:101-02.

that Sheriff Tregre never interacted with plaintiff and indeed was never on the scene during the encounter. Accordingly, Sheriff Tregre is entitled to summary judgment with respect to plaintiff's excessive force claims against him in his individual capacity.

As to Bordelon, it is undisputed that he used force against plaintiff by placing him in a sleeper hold and using a flashlight to pry open plaintiff's mouth and retrieve drugs. Plaintiff was unequivocal in his deposition, however, that Bordelon never punched or struck plaintiff in any way. In response to defense counsel's question; "So if [other detectives] said that [Bordelon] hit you with the flashlight and punched you, that would not be correct?" Plaintiff's answer was "No, that's not correct at all. They lying on him."[37] The issue then is simply whether the admitted use of force by Bordelon was objectively reasonable or, if it was not objectively reasonable, whether the use of force violated clearly established law. *See Saucier*, 533 U.S. 194.

Whether a law enforcement officer's use of force is reasonable or excessive depends on the context in which it is used. *Flores v. City of Palacios*, 381 F.3d 391, 398 (5th Cir. 2004). The Fifth Circuit has held that a sleeper hold does not constitute an excessive use of force when it is incident to a search of the plaintiff's mouth for drugs as was the case here. *See Williams v. Bramer*, 180 F.3d 699, 704 (5th Cir. 1999) ("Whenever a detainee is physically searched by an officer, a physical confrontation inevitably results. In such circumstances, we cannot conclude that the alleged injury that resulted from the contact at issue here—that is, fleeting dizziness, temporary loss of breath and coughing—rises to the level of a constitutional violation."). Indeed, "[i]t is constitutional for officers recognizing an attempt to swallow and destroy what appears to be

---

[37] R. Doc. No. 31-5, at 30:120.

narcotics to hold the suspect's throat and attempt to pry open the suspect's mouth by placing pressure against his jaw and nose." *German v. Sosa*, 399 F. App'x 554, 557 (11th Cir. 2010) (citing *Espinoza v. United States*, 278 F.2d 802 (5th Cir. 1960)).

The use of the flashlight to attempt to pry open plaintiff's mouth was not unreasonable given the circumstances. Sheriff's Office personnel had reason to suspect that plaintiff was concealing drugs in his mouth. They were justified in taking action both to prevent the loss of evidence and to prevent plaintiff from injuring himself by accidently ingesting the drugs. The force used by Bordelon to achieve those ends was not excessive. Viewing the evidence in a light most favorable to plaintiff, the Court concludes as a matter of law that Bordelon's use of force was reasonable and that plaintiff's excessive force claim against Bordelon fails the first prong of the *Saucier* inquiry.[38] For the foregoing reasons, plaintiff's excessive force claims are dismissed except with respect to Schexnayder and Thomas.

### b. Remaining claims against Sheriff Tregre

The basis for plaintiff's remaining individual capacity claims against the Sheriff appear to be that the Sheriff failed to train and supervise his employees and that the Sheriff failed to discipline Schexnayder and Thomas after receiving the results of the internal affairs report.[39] Plaintiff avers that the Sheriff's actions violated 42 U.S.C. §§ 1983 and 1985. Plaintiff offers no evidence, however, that Sheriff Tregre was directly or personally involved in any use of force

---

[38] Even if plaintiff were correct that the force was excessive, the Court still concludes that "all reasonable officers in [Bordelon's] circumstance would [not] have known that the conduct in question violated the constitution," and plaintiff would fail the second prong of the *Saucier* test. *Batiste*, 458 F. App'x at 354.

[39] R. Doc. No. 47, at 5.

against plaintiff.   Instead, Sheriff Tregre is being sued only for his supervisory role over the Sheriff's Office.

Supervisors cannot be found liable under § 1983 through respondeat superior.   *Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir. 2005).   Courts have similarly held that respondeat superior is not a viable theory of liability under § 1985.   *See Green v. Tilley*, No. 2:04 CV 0819, 2006 WL 220847, at *3 (W.D. La. Jan. 23, 2006); *Zherka v. City of New York*, 459 F. App'x 10, 12 (2d Cir. 2012); *Jefferson v. Corizon Healthcare Providers*, No. 3:12-0988, 2013 WL 6909969, at *3 (M.D. Tenn. Dec. 30, 2013).

The Fifth Circuit has held that "[a] sheriff not personally involved in the acts that deprived the plaintiff of his constitutional rights is liable under section 1983 if: 1) the sheriff failed to train or supervise the officers involved; 2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and 3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights."   *Thompson v. Upshur Cnty., TX*, 245 F.3d 447, 459 (5th Cir. 2001); *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005).   With respect to the third prong, the Fifth Circuit has explained,

> Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.  For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.  Deliberate indifference requires a showing of more than negligence or even gross negligence.  Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity.  To satisfy the deliberate indifference prong, a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation.  It may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the

violation of constitutional rights, a supervisor might reasonably be found to be deliberately indifferent. . . .

We have stressed that a single incident is usually insufficient to demonstrate deliberate indifference. In *Cousin v. Small*, for example, we held that to succeed on his claim of failure to train or supervise the plaintiff must demonstrate deliberate indifference, which usually requires a plaintiff to demonstrate a pattern of violations. Similarly, in *Snyder v. Trepagnier*, we held that "proof of a single violent incident ordinarily is insufficient" for liability. Rather, the plaintiff must demonstrate at least a pattern of similar incidents in which the citizens were injured. Moreover, a showing of deliberate indifference requires that the Plaintiffs show that the failure to train reflects a "deliberate" or "conscious" choice to endanger constitutional rights.

Prior indications cannot simply be for any and all "bad" or unwise acts, but rather must point to the specific violation in question. That is, notice of a pattern of similar violations is required. While the specificity required should not be exaggerated, our cases require that the prior acts be fairly similar to what ultimately transpired and, in the case of excessive use of force, that the prior act have involved injury to a third party.

*Estate of Davis*, 406 F.3d 381–83 (quotations, footnotes, and citations omitted).

Plaintiff has failed to offer any evidence supporting his assertion that Sheriff Tregre made any type of "deliberate" or "conscious" choice that "directly caused" plaintiff's injuries. A deliberate indifference claim usually requires a plaintiff to demonstrate "a pattern of similar violations," *Estate of Davis*, 406 F.3d 383, but plaintiff here has not offered evidence of *any other* constitutional violations committed by the Sheriff's Office—much less *similar* violations.

Indeed, the only evidence plaintiff cites in his brief in opposition to this motion actually undermines his argument that Sheriff Tregre failed to train and supervise his employees. Plaintiff argues in his brief that the detectives who allegedly used excessive force against him violated the Sheriff's Office's "Use of Force Policy."[40] The existence of such a policy—although not

---

[40] R. Doc. No. 47.

dispositive of the issue—is actually evidence that the Sheriff was not "deliberately indifferent" in training and supervising the detectives and that the Sheriff did not condone a pattern of unconstitutional behavior.  Because, even viewing the record evidence in a light most favorable to plaintiff, his allegations are based on mere speculation and are without a factual basis, the Court concludes that plaintiff's deliberate indifference claim against Sheriff Tregre must be dismissed.

With respect to plaintiff's § 1985 claim, in order to prevail he must show (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States.  *Hilliard v. Ferguson*, 30 F.3d 649, 652–53 (5th Cir. 1994) (citations omitted).  In doing so the plaintiff must show that the conspiracy was motivated by a class-based animus.  *Id.*  Plaintiff has not satisfied this burden.

Even viewing the evidence in a light most favorable to plaintiff, plaintiff has offered no evidence that a conspiracy existed much less that there was a conspiracy "motivated by a class-based animus."  *Hilliard*, 30 F.3d at 653.  The Fifth Circuit has held that unsubstantiated and conclusory claims of discrimination under 42 U.S.C. § 1985 are without merit.  *See Webber v. Bureau of Prisons*, No. 05–10404, 198 F. App'x 406 (5th Cir. 2006) (conclusory allegations are not sufficient to state a racial discrimination claim); *Hamilton v. Service King Auto Repairs*, No. 10–10879, 437 F. App'x 328 (5th Cir. 2011) (unsubstantiated and conclusory claims of racial discrimination under 42 U.S.C. §§ 1985 and 1986 lacked merit).  Conclusory allegations are all that plaintiff has offered in support of his § 1985 claim, and they are insufficient to overcome

16

Sheriff Tregre's qualified immunity defense.  Accordingly, the § 1985 claims against Sheriff Tregre in his individual capacity must also fail.

### c.  Claims against Bordelon, Triche, Chappel, Rivet, Goudia, and Cruse.

In his complaint, plaintiff alleges multiple violations of federal law as to these six defendants,[41] but in opposition to summary judgment he offers practically no substantive support for his laundry list of allegations.  Indeed, except with respect to Schexnayder and Thomas, plaintiff has accused no other officers of specific misconduct.[42]  As previously explained, "[w]hen a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense."  *Club Retro, L.L.C.*, 568 F.3d at 194.  Plaintiff's brief in opposition to defendants' motion, even if liberally construed by this Court, addresses only why summary judgment should not be granted on plaintiff's excessive force claims and why summary judgment is inappropriate with respect to the claims against Sheriff Tregre, both of which were addressed above.  Accordingly, the motion should be granted as to all other claims which plaintiff has waived and abandoned by his failing to brief the same.

### 2)    Official Capacity Claims

Plaintiff has also sued all of the defendants in their official capacities.[43]  Defendants assert in their motion, however, that "no facts are pled that could be construed to imply any liability for any individual Defendant in his or her official capacity, excluding Sheriff Tregre."[44]  They argue

---

[41] R. Doc. No. 36, at 6; R. Doc. No. 2, at 11.
[42] *See* R. Doc. No. 31-5, at 25–26:99-102.
[43] R. Doc. No. 2, at 2.
[44] R. Doc. No. 31-1, at 8.

that the official capacity claims against the other defendants should therefore be dismissed, as they are "merely a repetition of Plaintiff's allegation[s] against St. John Parish."[45]

The Supreme Court has explained that an official-capacity lawsuit is "only another way of pleading an action against an entity of which an officer is an agent." *Kentucky*, 473 U.S. at 165. "When sued in their official capacities, officials are therefore representing their respective state agencies." *Culbertson v. Lykos*, 790 F.3d 608, 623 (5th Cir. 2015) (internal quotation and citation omitted).

Plaintiff admits that at all relevant times all of the defendants were officials of the same state agency—the St. John the Baptist Parish Sheriff's Office.[46]  Plaintiff offers no justification in his opposition to defendants' motion for maintaining the official capacity claims against defendants other than Sheriff Tregre.   Accordingly, the Court agrees with defendants that plaintiff's claims against the Sheriff's Office officials, other than Sheriff Tregre, are redundant, without legal significance, and should therefore be dismissed.  *See Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001) ("The district court was also correct in dismissing the allegations against all of the municipal officers and two of the employees of the Corps of Engineers in their official capacities, as these allegations duplicate claims against the respective governmental entities themselves."); *Petroplex Int'l, LLC v. St. James Par.*, No. 15-140, 2015 WL 6134097, at *9 (E.D. La. Oct. 19, 2015) (Milazzo, J.) (dismissing official capacity claims against Parish officials as redundant of the claims against the Parish itself).

---

[45] R. Doc. No. 31-1, at 8–9.
[46] R. Doc. No. 2, at 2–6.

### 3)      State Law Claims

Plaintiff also asserts state law tort claims against defendants pursuant to Louisiana Civil Code article 2315.[47]  "[Q]ualified immunity does not apply to Louisiana tort claims.  Instead, Louisiana's discretionary immunity statute applies to those claims."  *Glaster v. City of Mansfield*, No. 14-627, 2015 WL 852412, at *10 (W.D. La. Feb. 26, 2015).  Defendants argue that these claims are barred by La. R.S. 2798.1, the discretionary function immunity statute.  Because defendants do not distinguish between plaintiff's state law claims and plaintiff's federal law claims in their motion, the Court assumes that defendants are seeking summary judgment with respect to all of the defendants except Schexnayder, Thomas, and Sheriff Tregre.[48]  For the following reasons, the Court holds that the remaining defendants—Triche, Chappel, Rivet, Bordelon, Goudia, and Cruse—are not entitled to summary judgment as a result of La. R.S. 2798.1, but that plaintiff's state law claims against these defendants should nevertheless be barred.

Pursuant to Louisiana Civil Code article 2315(A), "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."[49]  To prove negligence under Louisiana law, a plaintiff must show that: (1) "the defendant had a duty to conform his conduct to a specific standard;" (2) "the defendant's conduct failed to conform to the appropriate standard;" (3) "the defendant's substandard conduct was a cause in fact of the plaintiff's injuries;"

---

[47] R. Doc. No. 2, at 12.

[48] The Court notes that the state law claims against Sheriff Tregre in his official capacity remain in the lawsuit.  Pursuant to Louisiana state law, "an employer is liable for a tort committed by his employee if, at the time, the employee was acting within the course and scope of his employment."  *Baumeister v. Plunkett*, 673 So.2d 994, 996 (La. 1996).

[49] La. Civ. Code art. 2315(B) sets forth the damages recoverable in a § 2315 action.

(4) "the defendant's substandard conduct was a legal cause of the plaintiff's injuries;" and (5) "actual damages."  *Lemann v. Essen Lange Daiquiris*, Inc., 923 So.2d 627 (La. 2006).

Louisiana R.S. 9:2798.1 provides that "[l]iability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties."  La. R.S. 9:2798.1(B).  Judge Zainey of this Court has explained the application of La. R.S. 9:2798.1 as follows:

> In *Commerce & Industry Insurance Co. v. Grinnell Corp.*, 280 F.3d 566 (5th Cir. 2002), the Fifth Circuit recently explained how Louisiana's discretionary immunity statute applies to prohibit certain state law claims.  In determining whether immunity applies, Louisiana courts employ the two-step test set out by the United State Supreme Court in *Berkovitz v. United States*, 486 U.S. 531 (1988), when determining immunity under the Federal Tort Claims Act.  *Commerce & Industry*, 280 F.3d at 571.  The first step of the *Berkovitz* test requires that the action at issue be discretionary, i.e., the product of judgment or choice.  *Id.* (quoting *Berkovitz*, 486 U.S. at 536).  Thus, immunity does not apply when a statute, regulation, or ordinance specifically prescribes a course of action for the employee to follow.  *Id.*
>
> Assuming the challenged conduct involves an element of discretion or judgment, step two of *Berkovitz* requires the court to then determine whether that judgment is of the kind that the discretionary function exception was designed to shield.  *Id.* at 572.  The discretionary immunity statute only protects governmental action based upon considerations of public policy.  *Id.*  In short, if the discretionary act was grounded in social, economic, or political policy, then the discretionary function exception immunizes the public entity (or employee) from suit.  *Id.*

*Turner v. Houma Mun. Fire*, No. 99-152, 2002 WL 1467876, at *6 (E.D. La. July 8, 2002) (Zainey, J.).  Furthermore, and significantly for this Court's analysis, courts have held that La. R.S. 9:2798.1 "does not protect against legal fault or negligent conduct at the operational level, but only confers immunity for policy decisions; i.e. decisions based on social, economic, or political concerns." *Lockett v. New Orleans City*, 639 F. Supp. 2d 710, 745 (E.D. La. 2009) *aff'd*, No. 09-30712, 2010

WL 1811772 (5th Cir. May 5, 2010) (Barbier, J.) (citing *Saine v. City of Scott*, 819 So.2d 496 (La.

App. 3 Cir. 2002).

Defendants Triche, Chappel, Rivet, Bordelon, Goudia, and Cruse are not protected by La.

R.S. 9:2798.1 because the statute "does not protect against legal fault or negligent conduct at the

operational level, but only confers immunity for policy decisions." *Lockett*, 639 F. Supp. 2d at

745.  Plaintiff's claims against these defendants, even if accepted as true by this Court, do not

allege more than "conduct at the operational level."  Indeed, the allegations arise from defendants'

purported decisions not to intervene when excessive force was allegedly used on plaintiff during

the consent search, as well as from their alleged failure to obtain medical treatment for plaintiff.

While La. R.S. 9:2798.1 might conceivably be an appropriate defense to the allegations

against Sheriff Tregre, who was the policymaker in the Sheriff's Office, the alleged "operational"

decisions for which the other defendants are being sued are not "policy decisions" within the scope

of La. R.S. 9:2798.1.  But even if this Court were to assume that the defendants' decisions during

the consent search were policy decisions, defendants have still failed to offer evidence "that their

discretionary acts were grounded in social or public policy," which is required in order to invoke

La. R.S. 9:2798.1's protection.  *Turner*, 2002 WL 1467876 at *6.  It follows that this defense to

plaintiff's state law claims cannot be maintained.

The enumerated defendants are, however, nevertheless entitled to summary judgment on

plaintiff's state law claims.  First, and as explained above, plaintiff admits in his deposition that

the only Sheriff's Office employees who he remembers beating him were Schexnayder and

Thomas. [50]  As there is no evidence in the record creating a genuine issue of material fact with respect to the other defendants, plaintiff's own admission mandates that the assault and battery claims against the remaining officers be dismissed.  Second, plaintiff has offered insufficient evidence to support his claim that defendants are liable for failing to intervene when excessive force was allegedly used on plaintiff during the consent search and for failing to obtain medical treatment for plaintiff.

In order to preclude summary judgment, plaintiff "must come forward with specific facts showing that there is a genuine issue of material fact for trial."  *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.  But plaintiff's opposition cites no evidence in the record—let alone admissible evidence—to support his allegations.  Plaintiff's own deposition testimony does not affirmatively charge that Triche, Chappel, Rivet, Bordelon, Goudia, or Cruse were present when the excessive force was allegedly used.  Furthermore, plaintiff admitted that none of these defendants beat him or caused him any harm,[51] and that defendants called an ambulance to bring him to the hospital after the search.[52]  These admissions are the only evidence plaintiff offers with respect to the six defendants at issue, and the Court notes that they actually undermine plaintiff's legal claims.

Additionally, the Court observes that "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment, especially where . . . the nonmoving party is well aware of the existence of such evidence."  *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992).  "Rule 56

---

[50] R. Doc. No. 31-5, at 28–29:111-13.
[51] R. Doc. No. 31-5, at 25–26:98-102.
[52] R. Doc. No. 31-5, at 26:103.

allocates that duty to the opponent of the motion, who is required to point out the evidence, albeit evidence already in the record, that creates an issue of fact." *Id.* It follows that even if admissible evidence contained in the internal affairs report could be construed to support plaintiff's state law claims, plaintiff's failure to identify that evidence for the Court precludes its consideration with regard to this motion.

Defendants are correct in their assertion that plaintiff has offered no evidence that defendants Triche, Chappel, Rivet, Goudia, and Cruse took any action to cause plaintiff harm.[53] In addition, the Court has already determined that Bordelon did not act unreasonably when he placed plaintiff in a sleeper hold and used a flashlight to pry his mouth open. The evidence in the record, even viewed in the light most favorable to plaintiff, does not support plaintiff's allegations that the actions of defendants Triche, Chappel, Rivet, Bordelon, Goudia, and Cruse violated Louisiana law. Plaintiff's state law claims against these defendants must therefore be dismissed.

## II.    Motion *in limine*

As summarized by the Fifth Circuit Court of Appeals:

> A motion *in limine* is a motion made prior to trial for the purpose of prohibiting opposing counsel from mentioning the existence of, alluding to, or offering evidence on matters so highly prejudicial to the moving party that a timely motion to strike or an instruction by the court to the jury to disregard the offending matter cannot overcome its prejudicial influence on the jurors' minds.

*O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1306 n. 1 (5th Cir. 1977) (internal quotation marks omitted). Further, numerous federal courts have found "that motions in limine may be used to secure a pretrial ruling that certain evidence is admissible [or inadmissible]." *Bond Pharmacy,*

---

[53] R. Doc. No. 31-1, at 13.

*Inc. v. AnazaoHealth Corp.*, No. 3:11cv58, 2012 WL 3052902, at *2 (S.D. Miss. July 25, 2012) (citing cases).  Defendants have asked this Court to make a pretrial ruling that testimony, evidence, and argument regarding the internal affairs report is inadmissible.

Rule 801(c) of the Federal Rules of Evidence defines "hearsay" as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."  In his opposition to defendants' motion, plaintiff does not argue that he seeks to introduce the contents of the internal affairs report for a purpose other than its truth.  Accordingly, the Court begins with the observation that the internal affairs report is hearsay, as it is an out-of-court statement that plaintiff wishes to offer for the truth of the matter asserted.  Absent some exception or exclusion from the hearsay rule, the report is therefore inadmissible at trial.  Plaintiff relies on several hearsay exceptions and exclusions to support the admissibility of the report.

First, plaintiff argues that the report is admissible pursuant to Rule 803(8)(A)(iii).  Rule 803 excludes certain types of statements from the hearsay ban even though the declarant is available as a witness, primarily because "under certain circumstances, a statement, although it is hearsay, may still possess circumstantial guarantees of trustworthiness sufficient to justify its admission as evidence."  *Moss v. Ole S. Real Estate, Inc.*, 933 F.2d 1300, 1305 (5th Cir. 1991) (citation omitted).  Rule 803(8) excludes from the hearsay rule certain public records and reports.  The Rule 803(8) exception "is based upon the principles that public documents prepared in the discharge of official functions are presumed trustworthy, and the necessity of using such documents is due to the likelihood that a public official would have no independent memory of a

particular action or entry where his duties require the constant repetition of routine tasks." *United States v. Becerra-Valadez*, 448 F. App'x 457, 461 (5th Cir. 2011).

Rule 803(8)(A)(iii) creates a hearsay exception for "[a] record or statement of a public office if it sets out . . . in a civil case . . . factual findings from a legally authorized investigation," unless "the source of information or other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8)(A)(iii). "Opinions and conclusions, as well as facts, are covered by [this Rule]," *Moss*, 933 F.2d at 1305, and the Supreme Court has adopted a broad interpretation of its applicability. *See Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 169–70 (1988). A Rule 803(8) report is presumed to be admissible unless the party opposing admission proves the report's untrustworthiness. *Moss*, 933 F.2d at 1305. Of course, this presumption of admissibility only applies after a party demonstrates the applicability of the Rule 803(8) exception in the first place. The Fifth Circuit has explained that a report may be partially admitted and partially excluded under this Rule. *Moss*, 933 F.2d at 1310.

It is clear in this case that the Rule 803(8) exception cannot render the entire report admissible. While defendants admit that the report was the result of a legally authorized investigation,[54] it consists not only of "factual findings," but also of witness statements and the investigator's summary of those witness statements. A trial court "need only admit the factual findings, including opinions and conclusions," of a report; "[i]t should not admit any portion of the investigatory file which contains otherwise inadmissible evidence." *Moss*, 933 F.2d at 1310. Even with respect to the factual findings, however, the Fifth Circuit has observed that, in order to

---

[54] R. Doc. No. 31-7, at 4.

be admissible, a report's conclusions must typically relate to the sort of "objective factual matters" that public agencies report on "as a matter of course." *United States v. El-Mezain*, 664 F.3d 467, 499 (5th Cir. 2011) (citations omitted). The reason is that the public records exception "is based on the notion that public records are reliable because there is a 'lack of . . . motivation on the part of the recording official to do other than mechanically register an unambiguous factual matter.'" *Id.* at 498–99. Indeed, a public report's conclusions are less reliable, and hence less likely to be admissible, where the conclusions are obtained through "unknown evaluative means." *Id.* at 499.

The report at issue includes portions where the investigator recounts what witnesses told him about the February 7, 2014 consent search. These portions of the report are a classic example of hearsay within hearsay. *See Rea v. Wisconsin Coach Lines, Inc.*, No. 12-1252, 2015 WL 1012936, at *4 (E.D. La. Mar. 5, 2015) (Duval, J.) (describing a similar "hearsay within hearsay" problem with respect to witness statements contained in a police report). "Both levels of hearsay must conform to a hearsay exception to be admissible." *Moss*, 933 F.2d at 1311 (citing Fed. R. Evid. 805).

The first level of hearsay is the report's summary of statements told to the investigator. The summaries are hearsay because they are out-of-court statements—statements made in a report instead of on the witness stand—and because they are being offered for their truth—i.e., not simply to prove that the investigator did in fact prepare a summary of witness statements but rather that the investigator's summary of those witness statements is accurate and true. Fed. R. Evid. 801. The second level of hearsay consists of the statements made by the witnesses themselves. To the extent the witnesses are not parties, their statements are also hearsay because the witnesses made

26

them outside the courtroom and because they are offered to prove the truth of the matter asserted. *See* Fed. R. Evid. 801, 802.

The report's summaries of witness statements are not admissible because plaintiff has not demonstrated that each level of hearsay can be cured. The public records exception does not remedy the first level because the investigator's summary of what the witnesses told him is not a factual finding, opinion, or conclusion of the investigator. It follows that even though the hearsay exclusion for admissions of party opponents may cure the second level of hearsay as to those witnesses who are parties,[55] the first level of hearsay cannot be overcome regardless of which witness made the statement. Accordingly, the parts of the report in which the investigator summarizes what each witness told him are inadmissible hearsay. *See Manis v. Lawson*, 585 F.3d 839, 844 n. 3 (5th Cir. 2009) ("Third party statements included in a police report are not admissible under the public records exception to the hearsay rule."); *Valdes v. Miami-Dade Cty.*, No. 12-22426-CIV, 2015 WL 7253045, at *6 (S.D. Fla. Nov. 17, 2015) (O'Sullivan, J.) ("Witness summaries contained in reports are generally excluded under the hearsay rule.").

The report also contains signed transcripts of witness interviews. These transcripts are not factual findings, opinions, or conclusions of the investigator, and they are not admissible pursuant to the Rule 803(8)(A)(iii) exception. Plaintiff has offered no other hearsay exception that would render these transcripts admissible as to those witnesses who are not parties. To the extent the statements are made by parties, however, plaintiff is correct that the statements are not within the definition of hearsay and, provided that a proper foundation is laid, these statements are admissible

---

[55] Fed. R. Evid. 801(d)(2).

against the parties irrespective of the applicability of the public records exception.  Fed. R. Evid.

801(d)(2).[56]

Finally, the Court finds that the results of the internal investigation should be excluded as

not falling within the Rule 803(8)(A)(iii) exception.  The Court here refers to the investigator's

conclusions that Bordelon did not use excessive force and that Schexnayder and Thomas were

lying about Bordelon's actions and should be discharged.  It is true that "factual findings from a

legally authorized investigation" are presumptively admissible, and that other courts have admitted

factual findings of internal affairs reports pursuant to Rule 803(8)(A)(iii).  *See Jones v. Slay*, No.

4:12-CV-2109 CAS, 2014 WL 6775816, at *9 n.5 (E.D. Mo. Dec. 2, 2014) (collecting these

opinions).  That presumption, however, only applies to "*factually based* opinions or conclusions."

*Beech*, 488 U.S. at 162 (emphasis added).  Indeed, the Supreme Court has made clear that

"statements not based on factual investigation" are barred by Rule 803(8)(A)(iii).  *Id.* at 169.  As

explained previously, this circuit has clarified that factually based opinions or conclusions are

typically those that relate to "objective factual matters" that public agencies report on "as a matter

of course."  *El-Mezain*, 664 F.3d at 499.

While the internal affairs report before the Court does contain opinions and conclusions,

they are not "*factually based* opinions [and] conclusions" and are not admissible pursuant to Rule

803(8)(A)(iii).  Indeed, the investigator's conclusions regarding Bordelon, Schexnayder, and

Thomas were based entirely on the investigator's credibility determinations.  As the Fifth Circuit

---

[56] R. Doc. No. 36, at 2.  Unlike the case of a non-party witness, a transcript of a party's statements may be admissible if a proper foundation for the introduction of the statements is made by a witness at trial.

has acknowledged in determining that police officer's opinions regarding the cause of automobile accidents are generally not admissible conclusions under Rule 803(8), "[this circuit] still distinguishes between admissible findings of fact and inadmissible evaluative conclusions or opinions in official reports." *Duhon v. Marceaux*, 33 F. App'x 703, 703 n.3 (5th Cir. 2002). The latter are not the sort of reliable, objective factual matters that the public reports exception was meant to encompass.

Even if the report's conclusions do fall within the scope of the Rule 803(8)(A)(iii) exception, the Court also agrees with defendants that Rule 403 warrants its exclusion.[57] Pursuant to Rule 403, the Court may "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. The prejudicial impact of the investigator's conclusions is significant. There is a substantial danger that the jury will be unduly influenced by the investigator's credibility determinations—determinations which the investigator is no more competent to make than the jury. Furthermore, credibility determinations are for the

---

[57] R. Doc. No. 30-1, at 3–5. Defendants also argue that the Fifth Circuit's decision in *Chapman v. Ensco Offshore Co.*, 463 F. App'x 276 (5th Cir. 2012) is "directly on point and is controlling on the issue of excluding internal reports of a matter that is the subject of litigation." R. Doc. No. 30-1, at 2. But this argument is clearly incorrect. In *Chapman*, the Fifth Circuit considered the plaintiff's argument that the trial court erred in ruling that an incident investigation report was inadmissible hearsay. *Id.* at 279. The plaintiff argued for the first time on appeal that the report should have been admissible under the business records exception. *Id.* The Fifth Circuit succinctly rejected that argument, noting that the plaintiff "cites nothing in the record establishing that the document meets the requirements for invoking that exception," but rather "baldly asserts" the exception's applicability. *Id.* The plaintiff also argued that the report should not have been considered hearsay because its author testified at trial. *Id.* The Court dismissed that argument in one sentence, observing that the availability of the report's author at trial has nothing to do with whether the report itself is hearsay. *Id.* This was the extent of the Fifth Circuit's analysis, and characterizing the opinion as the controlling authority on the issue before this Court is therefore inaccurate.

trier of fact to make, not witnesses. *Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002). The investigator's opinion about whether certain defendants are telling the truth is substantially outweighed by the danger of unfair prejudice.[58]

In addition, the Court concludes that the polygraph results of Schexnayder, Bordelon, and Thomas should be excluded for lack of a proper foundation as well as being unduly prejudicial pursuant to Rule 403. Polygraph results are not per se inadmissible in civil cases, but they must meet the standards announced in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) before they will be admitted. *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000). Pursuant to *Daubert*, "a district court should analyze: (1) the scientific validity of the method; (2) the extent to which the trier of fact will be assisted in understanding the evidence and determining the fact at issue; and (3) whether the evidence will have a prejudicial effect which is not outweighed by its probative value." *Id.* (citing *Daubert*, 509 U.S. at 593–95).

The report at issue only presents the investigator's summation of defendants' polygraph results, not the results themselves. Without information demonstrating the reliability of these results, the Court is unable to gauge the tests credibility pursuant to *Daubert*. Accordingly, the polygraph results are inadmissible due to plaintiff's failure to establish a proper foundation for their admission. The Court additionally finds, however, that the exclusion of the results is warranted by Rule 403. Any probative value the purported results offer is substantially outweighed by the danger of unfair prejudice they pose to defendants Schexnayder and Thomas. The jury is to determine the credibility of the witnesses, *Galvan*, 293 F.3d at 764, and the polygraph results

---

[58] Moreover, given the Court's order dismissing Bordelon from this lawsuit, the investigator's conclusion that Bordelon did not use excessive force against plaintiff no longer appears relevant.

are likely to substantially affect this determination irrespective of their probative value which this court finds to be minimal in light of the lack of evidence showing the results to be reliable.

The motion *in limine* is therefore granted in part. The motion *in limine* is granted with respect to admission of the entire report, although relevant portions of the transcripts of interviews with Schexnayder and Thomas may be admitted provided that a proper foundation for their admission is laid at trial.[59]

The Court additionally notes that its ruling regarding the admissibility of the interview transcripts of Schexnayder and Thomas is limited to the holding that those transcripts are not hearsay. Defendants can still argue that such statements are inadmissible pursuant to other evidentiary rules, i.e., the statements may be irrelevant, cumulative, or unduly prejudicial. All of these determinations are deferred until trial.

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that defendants' motion for partial summary judgment is **GRANTED.** Except with respect to Schexnayder and Thomas, plaintiff's claims against defendants in their individual capacities are **DISMISSED WITH PREJUDICE.** Except with respect to Sheriff Tregre, plaintiff's claims against defendants in their official capacities are also **DISMISSED WITH PREJUDICE.** The Court notes that plaintiff's state law claims against Sheriff Tregre premised on vicarious liability also remain in the lawsuit.

---

[59] The only defendants who remain in this action after the Court's resolution of defendants' motion for partial summary judgment are Schexnayder, Thomas, and Tregre. Sheriff Tregre was not interviewed as part of the investigation, but Schexnayder and Thomas were interviewed.

**IT IS FURTHER ORDERED** that defendants' motion *in limine* is **GRANTED IN PART**.  The motion *in limine* is **GRANTED** with respect to admission of the entire report, although relevant portions of the transcripts of interviews with Schexnayder and Thomas may be admitted provided that a proper foundation for their admission is laid at trial.

New Orleans, Louisiana, December 2, 2015.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**